UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| HEARTLAND AGRI PARTNERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SOY INVESTORS II, LLC<br><br>Defendant. | ) | Case No. 4:15-cv-273<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND REQUEST FOR EXPEDITED TREATMENT UNDER RULE 57** |

COMES NOW Heartland Agri Partners, LLC, d/b/a Insta-Pro International, ("Heartland") and hereby presents its cause of action as follows:

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

2. There is a presently existing controversy as to the validity, enforceability and lawfulness of a contract as described in 28 U.S.C. § 2201 under federal antitrust law and otherwise.

3. Expedited treatment is appropriate for this matter pursuant to Iowa Rule of Civil Procedure 57.

4. Plaintiff Heartland is an Iowa limited liability corporation with its principal place of business in Polk County, Iowa.

5. Defendant Soy Investors II, LLC ("Soy Investors"), is an Iowa corporation with its principal place of business, upon information and belief, in Warren County, Iowa.

6. Triple "F", Inc. ("Triple "F"") was an Iowa corporation with its principal place of business in Polk County, Iowa.

7. The Complaint presents claims under 15 U.S.C. §§ 1 and 14.

8. Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1331.

9. Venue exists in this Court.

10. Heartland manufactures and sells equipment that uses a non-chemical high shear dry extrusion process to produce human food and feed, including human food grade soy protein products. The human food grade soy protein products help bring nutritious, cost effective and high quality protein into human diets all over the world. Examples include, but are not limited to, (a) textured soy protein (tsp) that replaces meat or acts as a meat extender for those who cannot afford meat protein or choose not to eat meat, and (b) corn-soy blend, which is considered a Fortified Blended Food purchased by many humanitarian organizations around the world to help those who are malnourished. Heartland does not sell food or food ingredients. It sells equipment and provides technical assistance and know-how.

11. Heartland's process is desired because it is chemical free and environmentally safe. A non-chemical high shear dry extrusion process results in better flavor, mouth-feel and shelf-life.

12. Soy Investors produces human food grade soy-based ingredients using Heartland's non-chemical high shear dry extrusion process. Soy Investors does not sell extrusion equipment. It sells food ingredients.

13. Heartland purchased assets from Triple "F" through an asset purchase agreement dated August 29, 2008, including the assets to produce its equipment and the know-how to use the technology to make a variety of food ingredients.

14. Soy Investors acquired Triple "F"'s soy-based food ingredient business, including the know-how to make human food grade soy protein products, through as asset purchase agreement with Triple "F," Inc., dated January 8, 2009.

**The Agreement**

15. On or about January 12, 2009, as mandated by Heartland's asset purchase agreement with "Triple F", Heartland, Triple "F", and Soy Investors consummated an agreement denominated a "Noncompetition Agreement" (the January 12, 2009 Agreement).

16. The January 12, 2009 Agreement does not prevent Heartland from selling food ingredients to Soy Investors's customers. Instead, it is an agreement designed to prevent Heartland from selling equipment or providing technical assistance and know-how to third parties who could then compete with Soy Investors.

17. The January 12, 2009 Agreement provides:

> 1. Covenant Not to Compete. Heartland and Triple F severally agree that during the term of this Agreement, neither Heartland nor Triple F will:
>
> (a) sell equipment or replacement parts to any party that it knows intends to use the equipment or replacement parts to produce or otherwise process human food grade soy protein products in the United States or Canada; or
>
> (b) provide technical assistance or know-how to any party for the purpose of producing or otherwise processing human food grade soy protein products in the United States or Canada.
>
> The foregoing provisions shall not apply to any party that purchased equipment or parts from Triple F prior to the date of this Agreement expressly for the purpose of producing or otherwise processing human food grade soy protein products, which parties are listed on Exhibit A attached hereto and made a part hereof.

January 12, 2009 Agreement at ¶ 1.

18. Rather than forbidding Heartland from competing with Soy Investors, the January 12, 2009 Agreement, instead, forbids Heartland from selling its equipment or providing technical assistance and know-how to anyone other than Soy Investors and three additional companies specified in the contract, one of which is no longer in business, in the United States or Canada. The restriction is perpetual.

19. Soy Investors claims that the remaining companies to which Heartland is allowed to sell its equipment control over 90% of the non-chemical high shear dry extrusion soy-based food ingredient market in the United States and Canada.

20. The January 12, 2009 Agreement's sole goal is to perpetually prevent market entry by new competitors that could compete with Soy Investors.

21. No other company can manufacture equipment with the same quality and know-how as Heartland can.

22. Heartland expressed concern to Soy Investors that its desire to preclude Heartland from selling to anyone other than the companies that Soy Investors claims control over 90% of the non-chemical high shear dry extrusion soy-based food ingredient market creates serious obstacles to any company seeking to enter the non-chemical high shear dry extrusion soy-based food ingredient market.

23. Since 2009, potential market entrants to the human food grade soy-based ingredient market in the United States and Canada have approached Heartland seeking to purchase equipment and obtain technical assistance to enter the non-chemical high shear dry extruded soy-based food ingredient market, but Soy Investors seeks to exclude the potential market entrants from the market by enforcing the restrictive covenant in the January 12, 2009 Agreement to preclude such sales.

24. In response to Heartland's concern about the contract's market impact and lawfulness, Heartland addressed these concerns to Soy Investors. Soy Investors made clear its intent to enforce the January 12, 2009 Agreement and thereby prevent Heartland from selling to anybody but those Soy Investors claims control over 90% of the market for non-chemical high shear dry extruded soy-based food ingredient market in the United States and Canada.

25. The January 12, 2009 Agreement is broader than necessary to protect Soy Investors's business and perpetually prohibits Heartland from selling to entities that would make non-competing products including, but not limited to, a) products using a small amount of soy-based ingredients (i.e., 1% soy protein), b) products such as corn-soy blends (welfare relief foods) that Soy Investors does not make, and c) products produced in the United States or Canada, but sold on the international market.

26. Soy Investors has threatened Heartland with litigation if it tries to sell to any of Soy Investors's competitors or potential market entrants.

27. Heartland's inability due to contractual restrictions in the January 12, 2009 Agreement and Soy Investors's refusal to modify the restrictive covenant does not result from unilateral action by Heartland. Instead, it results from Soy Investors's attempt to enforce the restrictive covenant to insulate Soy Investors from third party competition.

28. For over six years Heartland and Soy Investors have operated as independent companies. During this time, both Soy Investors and Heartland have advanced their own human food soy-based products and technologies. Neither Soy Investors nor Heartland has trade secret or confidential information of the other.

29. Heartland has no good will with Soy Investors' customers. It never sold soy protein to Soy Investors's customers or anyone else.

30. The restrictive covenant Soy Investors seeks to enforce does not protect good will that was purchased, but merely seeks to prevent competition from third parties.

31. Heartland's products are beneficial for localized processing solutions, eliminating freight costs to remote processing facilities and improving efficiencies in the production of soy-

based food products. In addition, local processing operations provide local employment opportunities.

32. More competitors create more competition and more markets for soy farmers.

33. Nothing indicates Soy Investors becomes more efficient or lowers prices by excluding competition. If anything, the restrictive covenant at issue is designed to protect inefficiency.

**Count I**

34. Heartland hereby incorporates the allegations in paragraphs 1-33.

35. The law disfavors restraints on competition.

36. Anti-competitive covenants are unreasonably restrictive unless they are tightly limited as to both time and area.

37. Rather than having any reasonable duration, the January 12, 2009 Agreement's restraint on trade "shall remain in effect in perpetuity." January 12, 2009 Agreement at ¶ 2(a).

38. A restraint on trade "in perpetuity" is facially unreasonable.

39. The January 12, 2009 Agreement covers the entire human food grade soy-based ingredient market in all of the United States and Canada.

40. Even a covenant not to compete must be reasonably necessary for the protection of a business.

41. To avoid being an unlawful restraint of trade, Soy Investors must persuade the Court that the market definition includes chemically processed soy protein and other mechanically processed soy protein. If the market definition is expanded to make the January 12, 2009 Agreement lawful, it is simply not necessary to protect Soy Investors. If the market is not

expanded, as will be seen, the January 12, 2009 Agreement unlawfully protects oligopolists from market entry.

42. To avoid being an unlawful restraint of trade, Soy Investors must argue that Heartland's technology is neither unique nor of significant value toward market entry. If Heartland's product is not unique and necessary for market entry, then the restraint on trade is simply not necessary to protect Soy Investors. If Heartland's product is unique and necessary, then restricting its sale keeps unique technology in the hands of oligopolists that it protects from market entry.

43. There is no good will with customers to protect because, in fact, Soy Investors and Heartland sell entirely different products to different market segments. Heartland sells equipment. Soy Investors sells food ingredients. Their customers are different—there is no overlap. Thus, the restriction at issue is designed solely to preclude competition for Soy Investors from third parties, which is an impermissible goal under applicable law.

44. A perpetual restraint on selling equipment or providing technical assistance or know-how to Soy Investors's competitors or potential market entrants anywhere in the United States or Canada is neither tightly limited nor necessary for the protection of the business in any lawful way.

45. A restriction designed to prevent market entry prejudices the public interest.

**Count II**

46. Heartland hereby incorporates the allegations in paragraphs 1-45.

47. Heartland has an agreement with Soy Investors dated January 12, 2009.

48. Through that January 12, 2009 Agreement, Soy Investors seeks to unreasonably restrain competition from third parties who are potential market entrants.

49. A contract restricting sales of a uniquely beneficial product and provision of technical assistance and know-how to oligopolists is unreasonable and anticompetitive.

50. One criterion for evaluating the reasonableness of a restraint on trade is duration.

51. Soy Investors seeks to enforce a restraint on trade that "shall remain in effect in perpetuity." January 12, 2009 Agreement at ¶ 2(a).

52. The contract Soy Investors seeks to enforce is a restraint of trade expressly designed to prevent entry of third party competitors into the market to compete with Soy Investors.

53. Exclusive dealing contracts should not be used to lessen competition.

54. As a result of Soy Investors's attempt to exclude competitors from the market, Heartland is forced to refuse to deal with potential market entrants that could compete with Soy Investors or offer other soy-based food or food- ingredients, resulting in significant anti-competitive effects.

55. The three entities to which Heartland is restricted to selling its products have market power in the non-chemical high shear dry extrusion soy-based food ingredient market in the United States and Canada.

56. Significant barriers to entry exist because no other company can manufacture equipment with the same quality and know-how as Heartland can

57. An agreement that forecloses competitors from a substantial market is an unlawful restraint of trade.

58. Soy Investors's conduct has and will continue to limit the potential for market entry and has and will continue to limit competition.

59. The preservation of potential competition in concentrated markets is an important goal of antitrust policy.

60. The threat of market entry from potential competitors works as a restraint on prices. Conversely, Soy Investors's removal of that threat of potential competition removes a check on prices and an incentive for efficiency.

61. There are no pro-competitive effects from excluding market entry.

62. The January 12, 2009 Agreement protects no good will because Heartland has no relationship with the purchasers of Soy Investors's products.

63. The January 12, 2009 Agreement is either (a) unnecessary to protect Soy Investors and, thus, unenforceable, or (b) it is unlawful and, thus, unenforceable.

64. If the January 12, 2009 Agreement could be found to be a lawful restraint on trade, it would still be unreasonable and unenforceable under Iowa law because, if it is lawful, it is not necessary to protect Soy Investors's legitimate business interests.

65. The restraint Soy Investors seeks to enforce affects interstate commerce.

66. The January 12, 2009 Agreement, is an unreasonable restraint of trade designed to prevent competition in violation of 15 U.S.C. § 1 and 15 U.S.C. § 14.

WHEREFORE, Heartland prays that the Court enter an order allowing Heartland to sell its products in the United States and Canada and holding that over six years of immunity from market entry is sufficient.

Respectfully submitted,

BELIN McCORMICK, P.C.



By ______________________

Michael R. Reck AT0006573
Kelsey J. Knowles AT0004233
Espnola F. Cartmill AT0010237
Christine E. Bestor Townsend AT0012175

666 Walnut Street, Suite 2000
Des Moines, IA 50309-3989

Telephone: (515) 283-4645
Facsimile: (515) 558-0645
E-mail: mrreck@belinmccormick.com
kjknowles@belinmccormick.com
efcartmill@belinmccormick.com
cetownsend@belinmccormick.com

ATTORNEYS FOR PLAINTIFF HEARTLAND AGRI PARTNERS, LLC

BELIN\H1034\0000\Pld-Petition (01938662).DOCX